All right, I think we're ready now. Ms. Letty, go ahead. May it please the Court, my name is Kristen Letty, and I am the Legal Research and Writing Specialist for the Northern District of West Virginia, and I appear this afternoon on behalf of Mr. Sean Price. Sean Price has entered a plea of guilty to the charge of accessing the Internet for the purpose of viewing child pornography. In his appeal, we asked this Court to determine whether the District Court erred at sentencing in the way that it counted the images at stake in this case under the sentencing guideline section 2G 2.2. Specifically, we asked whether Price created duplicate images that should be counted separately and individually in addition to the original images that he possessed when he disseminated the images via email to others. This Court should find that the District Court erred because at no time did Mr. Price possess more than 113 images in his own possession. He did not possess duplicate images of child pornography in his possession among the images that were sent via email. A separate portion of the same sentencing guideline, which punished him for his method of distribution with a two-level enhancement, and any further increase constitutes double counting, and therefore his punishment should be limited to those 113 images found in his possession. It was increased because of the Internet distribution? Yes, it was. Is that the distribution of the deputy sheriff? This was the... That you're talking about? Yes. The distribution under the sentencing guideline. That's what kicked it above 113? No. What I'm referring to is Part BF that says distribution other than distribution described in subdivisions A through E is an increase by two levels. Therefore, he received an enhancement of two levels for the way in which he distributed images. All right. The very fact that he used transmission by Internet gave him a two-level enhancement itself? That's correct, sir. All right. Yes. Essentially, there are no facts in dispute. Like I said, the issue presented is whether the same images of child pornography sent via four separate email transitions constitute separate and distinct images under the guidelines, and whether he did, in fact, create duplicate images. And if the duplicates are separate and distinct, then how should they be calculated? It's our position that Mr. Price did not create duplicate images, that he sent a group of images that he had in his possession to a number of different people, but he did not create duplicates in a fashion analogous to, say, making photocopies, wherein he would have all of the images that he was going to send to a group of people all in his possession all at once. At no time did he possess on his own 2,000 images or 696 images, which the government alleges that he actually possessed at any one time in his possession. How much did he possess that he sent that did not include spoofing Deputy Sheriff Kosick, in your view? In my view? No. In our brief, we talk about the way in which he sent out his different images, and there were four emails, and the first email included 12 attachments that he had from his possession. This is on page 9 of our brief. In the second email, there were 22 attachments and one collage, and a collage accounted for, I believe it's 16 images. Then email 3 contained one collage. Then email 4- Did you have a corresponding number like you did for the first collage? Yes, 16. Both were 16? Yes. Same thing, okay. Email 3 was how many? Email 3 was 16 images. 16, okay. Yes, Your Honor. Sorry, I was making a note and didn't hear. As a collage? Yes. That email 2 or email 3? 3. I'll go through the total. Number 1 was 12, number 2 was 22, then a collage that had- 22 plus 16, equal to 38. And then 3 is 16? Yes, Your Honor. Okay. And then email 4 was 16 attachments and one collage, totaling 32 images. And that totals up to what? 98. All right. And these four emails- What brings him over is what he spoofed to the deputy sheriff. Is that right? Well, his subterfuge was that he was sending the emails under the guise of being the sergeant. I understand that. And in the government's brief, it says that that was sent for purposes of retaliation, right? Yes, that's correct, Your Honor. Why is something sent for purposes of retaliation relevant conduct, it seems to me, is the question. Relevant conduct includes something other than retaliation. It may be a separate offense. He wasn't charged for it. But if it's not relevant conduct, it can't be counted, I don't think. And my question is, what is your view as to why sending something in retaliation, as the government itself admits, is, in fact, make it part of relevant conduct? When the relevant conduct guideline talks about conduct that is trying to escape the offense or escape detection or what's the other one? The other two things? Avoid detection or responsibility. And that was the government's theory below was that that was what relevant conduct was. And yet in the brief here, they say it was for retaliation. And I'm curious what your view is. Sorry it takes so much time. That's okay. Our view, Your Honor, is that he should be held responsible only for the images that he had in his possession, not for a multiplication of the number of images that he sent out times the number of people that received the email. So you're not making the argument that it's not relevant conduct. You didn't make that relevant conduct. No, we did not, Your Honor. So had he made paper copies and had all of those images in his possession, then he should be responsible for having that number in his possession. And that activity may likely constitute creating duplicates. But here, he electronically forwarded the images, which is, I would say, analogous to passing along an image, and it's not a duplication. And treating the images sent out via email as duplicates creates a double-counting scenario, because one part of the guideline accounts for the way that he distributed the images, and then another part of the guideline accounts for the number of images that he had in his possession. And this court's precedent disfavors double-counting. The Fourth Circuit has not yet considered how to count duplicate images. Some circuits have with two resulting positions, so there is a circuit split as to the rules on counting duplicates. On one side, you have the Seventh and Third Circuits, which discard duplicates. And on the other hand, you have the Sixth Circuit and the Eighth Circuit, which discuss the danger of multiplicity in child-born cases. I thought the Third Circuit just assumed without deciding. Weren't those assumed without deciding cases? It was an observation in dicta, yes, Your Honor, that duplicate images are not to be counted without any sort of analysis or guidance as to why they reached that decision. Similarly, with the Seventh Circuit, to be fair, in U.S. v. Lacey and U.S. v. Long, in U.S. v. Lacey, the district court discounted duplicates from a group of 25 videos down to 12 videos for purposes. The court didn't hold that it was inappropriate to count. That's correct. Actually, it didn't find that the exclusion of duplicates was either right or wrong. And in U.S. v. Long, the Seventh Circuit noted here how the district court eliminated duplicates from the total number of images involved in the case. And in that case, the total number of images was well over 600 that they found. And the charge for which Mr. Prystan's convicted is accessing the Internet in order to view child pornography. It's not a distribution case. He did not upload the images he received from Photobucket to another file sharing service. And I think this is what makes this case slightly different from a normal child pornography distribution. Well, it is different from a distribution case because he wasn't charged with distribution. But he sent his emails to unsuspecting viewers who neither sought out child pornography nor would distribute the images any further. So it's not a factual scenario presented here in which the multiplication of child-born images and the resulting harm is demonstrated. And one more thing that I'd like to bring up from one of the, I believe it's the Sixth Circuit case, U.S. v. McNerney, is the court in that case talks about thumbnail images and how thumbnails are not duplicates. But rather they're simply previews of digital images that are viewable without opening in which the folder in which the image is contained. And I would argue that the images that were received here are similar to thumbnails and that no one wanted to open these images when they received these emails. It was a shock and they didn't want them. So I'd like to close by just saying that Mr. Price admitted to the possession of 113 images in his possession and pleaded guilty to the possession of them, and he should receive punishment commensurate with that number. Thank you. Mr. McWilliams. May it please the Court. I was the prosecutor below and I wrote the brief and I would like to expand upon some of it. I would like to go to Judge Payne's question about why is the spoofing of the emails relevant conduct to the count of intent to view? And that's covered on page 10, bottom of page 10 and 11 of the government's brief. And that provides that relevant conduct includes conduct that occurred in the course of attempting to avoid detection or responsibility for that offense. So what happened here is this started out as a typical child porn case where they searched his computer. I can't recall from the record exactly how many images he had. I've had cases where they have thousands and thousands. He did not. It was give or take around 98, maybe 113. But what he then did, the state trooper who did the search gave Mr. Price his business card, which has, of course, the West Virginia triangle on it. That's their symbol they wear on their uniforms. It had his phone number and, of course, it had his email address. And so Mr. Price is extremely computer savvy. I don't know how he did it, but he, quote, spoofed the trooper's email. And what he did was he took emails, those attachments that are listed on page 9 of the defendant's brief, and he sent child pornography to people like a reporter at the Pittsburgh Post-Gazette and said, hey, I've got other images if you're interested in getting more of my collection. And there on the email is his emblem from his uniform, and it says, you know, jkozik at wvsp.wv. It looks just like it came from a state trooper. And it is those images that are relevant conduct because he told the – Price told the probation officer that he did that to show that anybody can make it look like somebody else had your child porn. And what he was trying to say is even though I confessed to what was on my computer at the search, I really didn't do it because if somebody could do that to Trooper Kozik, then somebody could do it to my computer. And that's why under the guidelines – and there was no objection to this. He had already confessed, didn't he? Oh, yes. How would that be relevant to that theory you're talking about? That's what he told the probation officer. Well, that's in the pre-sentence report under a heading called Version of the Offense by the Government. And I couldn't find where the district court had actually made a finding on this, but it may be that I just didn't see it right. And in your brief, you say at the top of page 5 that this was done in an effort to retaliate, and then you go on to say, therefore, that becomes relevant conduct because it occurred in the course of attempting to avoid detection and responsibility. Now, those to me are non sequiturs. If I am trying to retaliate against somebody and I commit a crime, that's not necessarily attempting to avoid detection or responsibility for the offense of conviction. And here the effect of that situation is to increase the punishment drastically, and I was looking for a situation where the district court had made a finding agreeing with the government's position, but I didn't see it. Is there one? There is not because there was no dispute and no objection to that application or that guideline by the defense, and that's why there was no finding. And the only way I can rationalize the two statements in my brief is that maybe because I knew the trooper took it as retaliation because he works across the hallway from me. But if it's in my version of the offense that he told the probation officer that, that's because it in fact happened that way, and that's what Price told him is that I did this to show that just because it's on my computer didn't mean I did it because look at what I did to Kozik. And again, that was not objected to as being relevant conduct. It's our position that under the law, that being the guidelines, and under the two cases where there are truly reasoned opinions on duplicates, and under the rationale from those cases and other child porn cases that don't deal with duplicates, that duplicates are just as damaging as another photo. And to me, the guideline application note says essentially each photo and each image should be considered to be one image. And the defense claims in its brief that there's no explanation of that, and that to me is because it's as clear as clear can be. Each means each. And so if you look. Your explanation is a duplicate? Yes. How so? Because you're recreating for someone else an image. In this case, you have up to 93 people that received these images. But he was already enhanced for use of the computer, Internet, correct? Yes. So we know that that process. Well, for example, if you took one picture of child pornography and invited 50 friends to see it in the same room, would that be duplication? No. Why not? Because it's still one image under the guidelines. It doesn't become 1,000. But it was transmitted to 50 people. I thought you said they were invited to the room. They were. But was it not transmitted to transmission? Well, I just don't think that the law contemplates that showing one picture to 50 people at one time. Is it just as dangerous as you said? Because you justified. I think it is. But that's what you justified, your reason why this is duplication, because it's dangerous. And I'll tell you why it's dangerous, because we don't know. I know why you'll say it's dangerous, because more people have the image to see. Exactly. But isn't that the same thing is true in the room where 50 people saw it? No, because when you send it out there to 93 people, we don't know. Perhaps one of them or more is a child pornographer. You've now just added to that stash that that pornographer can now send on. Perhaps out of those 93 people, there was one person who maybe hadn't really looked at child pornography but was curious about it. So when you send them that duplicate and they open it, maybe now they become a child pornographer. Whether it's a duplicate or not, you've created that damage. And when you send to a potential person who's already a child pornographer and you've added to their stash, you've done so, whether it's a duplicate or not. And when you send that picture to 93 people who maybe don't like child pornography, you've re-victimized the children. And I would commend to you a one-and-a-half-page letter at Joint Appendix page 338. It was written in this case by Vicki, who's the victim of the most famous, I think the most famous, American child production case. A young woman who's abused by her father. And every time we get one of these cases where she's identified, under the victim law, we have to notify her. And when you read her letter in the Joint Appendix, she will tell you how she's re-victimized every time she finds out that another man, maybe a woman, but another man, has looked at her pictures. And that's true, whether they're looking at a duplicate or not. Is there any empirical support for that theory which is offered to support this multiplication-duplication theory? You mean? Yeah, has anybody ever studied it and said that, well, really it does increase enhanced victimization? There is. I can just tell you what the victims say. I think there are several victim letters all around that page 338 in this case. And all I can do is say the victims will tell you they've been re-victimized. Does it matter if they open it or not? No. It doesn't? No. Because that image, whether it goes to their iPad or their smartphone or their computer email, it is an image that's out there. So, other than that, it has to be sent? It has to be sent, yes. But if it's not sent, it doesn't matter. For example, if you took a photograph of the photograph and didn't develop it, that would be duplication. Didn't develop it? Yeah. But existed on the hard drive of the camera. Well, of course. No, it exists on the drive of the camera. Yes. I was going to say we kind of got away from development now. Yeah, right. So is it duplicated then? I believe it is, yes. Just photographing it and you never downloaded it all to a computer? No, because it exists as a digital image on a drive in that camera, a removable drive, that then can be loaded onto a computer. Why isn't it double counting to give an enhancement of two levels for using the Internet? And then you're saying, well, when you send it by the Internet, that's duplicating. It's the same thing. You're punishing exactly the same conduct two different ways. He was not punished a second time for sending it by the Internet. He was punished once and only once for the number of images. Under double counting, and I discussed that in my brief, if there's another statute or another guideline that gives enhancements for the exact same conduct as another part of the guideline, that's double counting. You are giving enhancement for a number of images, right? Yes, but it's… That's under a guideline. Yes. You're also giving an enhancement for using the Internet. That's under the guideline. Yes. And the only way you get the duplication number of images is by use of the Internet. So why aren't you using two different sections of the guideline to enhance the punishment in double counting? Because only one section of the guidelines gives an increase for the number of images. The enhancement he got for the Internet was for his intent to view, not for the transmission where he spoofed the email. That enhancement is given in every case. Absolutely. It is not confined to access with intent to view. And I agree. In fact, the government makes the argument all the time that it's part and parcel of distribution. It's what makes distribution so awful. And I absolutely agree. But in this case, the Internet enhancement came for what they found at the search. Had he never spoofed an email, he would have gotten that enhancement. So there's no double counting because there's no other section that addresses the increase for 600 or more images. I see. The other case, the two cases that clearly addresses the McNerney case, that's where the defendant had two hard drives, one of which he kept as a backup. McNerney had no trouble saying that they're duplicates because you may need them. Then you have the Sampson case where you have two emails sending out the same video. And to paraphrase Sampson, they said distribution of duplicate increases supply and availability of CP, child porn. That's what happened here. He increased the availability by sending it out to 93 people. While the Sullivan case from D.C. I kind of call it- On your own admission, not for the purpose of being salacious, but for the purpose of being somehow kind of thumbing his nose at law enforcement. Absolutely. Yes. But that's not the purpose. The purpose is the proliferation of child pornography. Here it was almost like a political statement, if you will. Well, the problem is we don't know if any recipients reproduced them. We don't know if any recipients were revolted like I am when I have to look at these things. It's the fact that he's created upwards of, give or take, depending on how you count the collages, 2,000 new images that went to upwards of 93 people. And who knows what they did with them? Obviously, you have to have some different idea of images. For example, you go to the National Gallery of Art, there are plenty of images of children nude. You wouldn't call that child pornography, obviously. No. Right. Because the purpose is for some artistic value. Here, by your own admission, he was spoofing or sort of thumbing his nose at law enforcement and said, Look how ridiculous it is. You're coming after me, prosecuting me when it's so easy that this could be done. I mean, so it's almost—this got almost an enhancement because you made law enforcement mad. That's why you're getting enhanced. No. He got an enhancement because the guidelines say when you have 600 or more images, it could have been done—take the policeman out of the picture. Just say he spoofed somebody else, some innocent person's email. It's not because they made the police mad. Had he never done this, he wouldn't have got that enhancement. But under the guidelines and under what he did, he's entitled to it. And it truly fits the language of Sullivan, the one, as I say, I call it the wheat case. And that's because even though they didn't discuss duplication, they said that when you take wheat or marijuana and distribute it, you've subdivided your supply. But when you take child porn and you transfer it, you multiply that supply and you increase the availability of child porn. And that's why what he did here in creating 2,000 plus images to 93 people was extremely dangerous. And that's why the guidelines properly enhanced him for more than 600 pictures. The only other—I think perhaps Judge Keenan, you may have hit upon this. Other than the two cases, McNerney and Sampson, that really talk about, analyze why a duplicate is just as dangerous as a non-duplicate, Lacey and Long, there was no analysis at the appellate level. And that's because at the district court level, the sentencing judge did what I sometimes say, threw the defendant a bone. In other words, what they said in both of those cases is, this defendant has thousands of images, so I'm not even going to count the duplicates. It doesn't matter because you still had thousands. And then Lacey and Long on appeal of the Seventh Circuit notes that in both cases, but doesn't—they didn't address it. They didn't make an analysis. And so if there are questions, I will ask them. Any further questions? Thank you very much. Ms. Leddy, you reserve some time. The D.C. Circuit case, United States v. Sullivan, draws a distinction between possession and access cases in which they discuss the viral element of the multiplicity of child porn that occurs in distribution cases. And they don't make the similar comment about accessing the Internet. And we stand by our position that Sean Price possessed 113 images. He admitted to that possession, and he should be punished accordingly. Thank you. Thank you very much. All right. We'll ask the court to adjourn the court for this session. Signed, aye. And then we'll come down and we'll agree counsel. Dishonorable court stands adjourned. Signed, aye. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Roger L. Gregory, Barbara Milano Keenan, Roger L. Gregory, Barbara Milano Ke